**E-filed 12/04/2007**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARTHUR G. MAIONCHI, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>SAFETY-KLEEN SERVICES, INC., et al.,<br><br>　　　　　　Defendants. | Case Number C-03-00647-JF<br><br>ORDER[1] DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>[re: docket nos. 107, 110] |

　　　　Plaintiffs Arthur G. Maionchi, Edward A. Maionchi, Thomas S. Dinette, and Charles J. Kraft ("Plaintiffs") and Defendant Union Pacific Corporation ("Union Pacific") have filed cross-motions for summary judgment on issues regarding liability and damages. For the reasons discussed below, the motions will be denied.

**I. BACKGROUND**

　　　　Plaintiffs were the general partners of a partnership that operated a solvent recovery business at 1470 Industrial Avenue in San Jose, California, ("the Industrial Avenue property") from 1971 until 1974. In 1974, Plaintiffs moved their operations to a new site at 1021 Berryessa Road, also located in San Jose ("the Berryessa Road property"). Plaintiffs incorporated their

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C-03-00647-JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT
(JFLC3)

1  solvent recovery business in 1980, at which time it became known as Solvent Service Co., Inc.
2  ("SSCI"). Plaintiffs were the sole shareholders of SSCI.
3  　　　　On June 19, 1990, the President of SSCI and Plaintiffs in their capacities as shareholders
4  executed a letter agreement with USPCI, Inc. ("USPCI"), a wholly owed subsidiary of Union
5  Pacific. The letter summarized the terms and conditions under which Plaintiffs would sell to
6  USPCI or one of its affiliates all of the outstanding capital stock of SSCI. The letter stated that
7  after performance of due diligence by USPCI and prior to closing, Plaintiffs and USPCI would
8  attempt to establish in good faith the liabilities of SSCI, contingent or otherwise. The letter
9  provided that if Plaintiffs and USPCI could not agree on the amount of such liabilities, either
10 Plaintiffs or USPCI could terminate the transaction before closing.
11 　　　　Between June and November 1990, the parties negotiated USPCI's acquisition of SSCI.
12 The parties evaluated a number of factors, including Plaintiffs disclosure of the fact that the
13 Berryessa Road property was contaminated. The terms and allocations of potential
14 environmental liabilities associated with operations at the Berryessa Road property were heavily
15 negotiated.
16 　　　　The parties ultimately entered into a Merger Agreement dated November 19, 1990.
17 Under that Agreement, Union Pacific acquired all of the common stock of SSCI ("the
18 Company"); the Company then was merged with one of Union Pacific's subsidiaries and, as the
19 surviving corporation, became a wholly-owned subsidiary of Union Pacific. Union Pacific
20 immediately transferred all of the Company's stock to USPCI; the Company thus became the
21 wholly-owned subsidiary of USPCI and the grandchild corporation of Union Pacific. Several
22 years later, Union Pacific sold its interest in USPCI, which now is known as Safety-Kleen
23 Services, Inc. The Company now is known as Safety-Kleen (San Jose), Inc.
24 　　　　The Merger Agreement contains provisions identifying certain liabilities to be borne by
25 the corporation that was merged into the Company, by USPCI (now Safety-Kleen) and by Union
26 Pacific (collectively, "the Buyers"), and those to be borne by Plaintiffs (referred to as "the
27 Shareholders"). As relevant here, the Merger Agreement provides that the Shareholders will
28 indemnify the Buyers with respect to "all Shareholder Environmental Liabilities to the extent and

1   in the manner set forth [in Section 8.1(d) of the Merger Agreement]." The Merger Agreement
2   also provides that the Buyers will indemnify the Shareholders with respect to "Shareholder
3   Environmental Liabilities to the extent Section 8.1(d) hereof does not require such liabilities to
4   be borne and paid by the Shareholders." The term "Shareholder Environmental Liabilities" is
5   defined as "(A) any and all Covered Liabilities of the Company (including any predecessor or
6   successor of the Company, whatever its legal form) arising under or out of or based upon a
7   breach of any representation or warranty of any Shareholder or the Company contained in
8   Section 3.17 or 3.19 hereof and (b) the RCRA Costs." The term "RCRA Costs" includes "all
9   Covered Liabilities of the Surviving Corporation, whether joint, several or other, attributable to,
10  arising out of or based upon the remediation, closure, response or other corrective action or fines
11  or penalties under any Environmental Law."
12       Section 8.1(d) provides that: (1) the Buyers are entitled to indemnification from the
13  Shareholders only after Shareholder Environmental Liabilities exceed $1,350,000; (2) after this
14  amount is reached the Shareholders must indemnify the Buyers with respect to all further
15  Shareholder Environmental Liabilities until the aggregate Shareholder Environmental Liabilities
16  so indemnified equals the value one-half the number of Environmental Escrow Shares; (3) after
17  this point is reached, the Buyers must pay 50% of all additional Shareholder Environmental
18  Liabilities, and the Shareholders must pay the remaining 50%, until all Environmental Escrow
19  Shares are distributed from the Environmental Escrow; and (4) after all Environmental Escrow
20  Shares have been distributed from the Environmental Escrow, the Buyers must pay any
21  subsequent Shareholder Environmental Liabilities.
22       Between 1993 and 1995, the Environmental Escrow was exhausted, primarily in
23  connection with cleanup of the Berryessa Road property, where the Company operated at the
24  time of the merger and thereafter. In the late 1990s, soil and groundwater at the Industrial
25  Avenue property was found to be contaminated. Three Sisters Ranch Enterprises ("Three
26  Sisters"), then-owner of the property, brought suit against a number of prior occupants of the
27  property seeking injunctive relief and damages relating to the contamination. *See Three Sisters*
28  *Ranch Enterprises v. Safety-Kleen (San Jose), Inc., et al.*, Case No. C-98-20683-JF. Plaintiffs in

the instant action were named as defendants in the *Three Sisters* action based upon their operation of the solvent recovery business on the Industrial Avenue property from 1971 until 1974. Plaintiffs stipulated in the *Three Sisters* action that they are liable for contamination at the Industrial Avenue property but sought indemnification under the Merger Agreement from Union Pacific and Safety-Kleen for all costs and liabilities incurred in connection with the *Three Sisters* action and the orders of the California Regional Water Quality Control Board.

In 2003, Union Pacific moved for summary judgment that it was not contractually obligated to indemnify Plaintiffs against any liabilities associated with Industrial Avenue. The Court granted the motion. Subsequently, the Ninth Circuit Court of Appeals issued a memorandum opinion holding that the indemnity provisions of the Merger Agreement are binding on Union Pacific and that Union Pacific is "not discharged from its obligation to indemnify the former partners against the liabilities arising out of the contamination at the Industrial Avenue site." *Maionchi v. Union Pacific Corp.*, 156 Fed. Appx. 27, 29 (9th Cir. 2005). The Court of Appeals directed that "damages and the terms of the declaratory relief should be determined on remand." *Id.* While Union Pacific argued that the Ninth Circuit did not determine that Plaintiffs' claimed damages met the definition of Shareholder Environmental Liabilities, in proceedings following denial of rehearing and remand this Court confirmed that the issues in the case are limited to a determination of the Plaintiffs' damages and the terms of declaratory relief. 11/08/2006 Order at 2.

The parties have filed cross-motions for summary judgment on the issue of damages. Plaintiffs ask the Court to determine that Union Pacific is liable to them for breach of contract, that damages, including prejudgement interest, for such breach incurred to the date of trial are $4,548,686, and through a judicial declaration, that Union Pacific is obligated to indemnify the Plaintiffs with respect to their future environmental liabilities at the Industrial Avenue property. Defendants argue that the Merger Agreement's indemnity provisions do not support Plaintiffs' demands and, in fact, that Plaintiffs are entitled to no damages at all.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

## III. DISCUSSION

A.   **Union Pacific's Motion**

Union Pacific seeks a determination that none of the costs or liabilities incurred by Plaintiffs at the Industrial Avenue property constitute damages for which Union Pacific is contractually obligated to indemnify Plaintiffs under the Merger Agreement. Union Pacific argues that Plaintiffs' expenses only are subject to indemnity if the alleged damages meet the definition of "Shareholder Environmental Liabilities" in Section 8.1(a)(ix) of the Merger Agreement. Union Pacific asserts that the Merger Agreement does not create an unrestricted right to indemnity for all losses arising out of contamination of property Plaintiffs had used in their business, and that the parties expressly defined "Shareholder Environmental Liabilities" as those "arising under or out of or based upon a breach of any representation or warranty" of Plaintiffs.

According to Union Pacific, Plaintiffs are entitled to indemnity only if there is some causal nexus between Plaintiffs' liability and the breach of a representation or warranty. Union

Pacific argues that the there is no such nexus because here Plaintiffs' acts and omissions in conducting solvent recovery operations at the Industrial Avenue site necessarily occurred between 1971 to 1974, more than fifteen years before the parties entered into the Merger agreement, and there was no causal relationship, or even an indirect nexus, between Plaintiffs' failure to disclose the environmental conditions at the Industrial Avenue property to Union Pacific in 1990, and the liabilities Plaintiff incurred in complying with the Regional Board's cleanup orders and litigating the various claims asserted against them in the *Three Sisters* action. Put differently, Union Pacific contends that because Plaintiffs would have incurred those liabilities whether or not Plaintiffs and Union Pacific ever entered into the Merger Agreement, the subject liabilities cannot possibly have arisen under or be based upon Plaintiffs' admitted breach of their representations and warranties.

Under the Merger Agreement, Section 8.1(a), "Shareholder Environmental Liabilities" ("SELs") are defined as:

> (A) any and all Covered Liabilities of the Company (including any predecessor of successor of the Company, whatever its legal form) arising under or out of or based upon a breach of any representation or warranty of any Shareholder or the Company contained in Section 3.17 or 3.19 hereof and (B) the RCRA Costs."

Section 3.17 provides:

> ii. there are no conditions existing on any of the properties currently owned or occupied, or formerly owned or occupied, by the Company that require remedial action, removal or closure by the Company under any Environmental Laws..."

Thus, SEL's under Section 8.1(a) fall into two categories: (1) those arising under or out of or based upon Plaintiffs' breach of any of representation or warranty contained in certain sections Merger Agreement; and (2) RCRA Costs." Union Pacific argues that an SEL under part (A) is not subject to indemnity unless the Covered Liability would not exist *but for* its omission from Schedule 3.17. Because the cleanup would have been necessary regardless of whether it was disclosed, Union Pacific argues that the associated costs are not subject to indemnification.

Here, the breach that triggered the indemnity provisions consisted of the fact that there were "conditions" at the Industrial Avenue property that "required remedial action" that were not listed in the accompanying schedule of liabilities. The Covered Liabilities that are "based upon"

the breach—i.e., the existence of these "conditions" not listed in Schedule 3.17—thus arise from the contamination of the Industrial Avenue property.  Conditions requiring remedial action, removal, or closure at the Industrial Avenue property were unknown to the Plaintiffs and were not described in Schedule 3.17.  The failure to disclose the condition, although unintentional, nonetheless was a breach.  Accordingly, because the costs of cleanup at the Industrial Avenue property appear to be covered by the terms of the Merger Agreement, Union Pacific's motion will be denied.

**B.     Plaintiffs' Motion**

Turning to the issue of damages, Plaintiffs contend that there are no issues of material fact regarding the amount of damages they are owed by Union Pacific under the terms of the Merger Agreement.  Plaintiffs argue that the terms of the Merger Agreement are broadly written to encompass every item of costs they seek as damages in this case and that Union Pacific therefore must indemnify them as to all liabilities arising out of environmental contamination at the Industrial Avenue property. Plaintiffs also assert that all of these costs are recoverable under section 2778 of the California Civil Code.

Plaintiffs assert that they are entitled to recover the following costs:  (1) environmental consultant and contractor costs in the amount of  $1,381,489.00; (2) regulatory oversight costs in the amount of $44,192.00; (3) hazardous waste generator fees of  $33,870.00; (4) site access fees of  $11,654.00; (5) mediation fees in the amount of  $2,961.00; (6) attorneys' fees of $891,015.00; (7) their settlement payment in the *Three Sisters* action of $900,000.00; and (8) prejudgment interest on each of these items, computed at 10% per annum from the date each expense was incurred.

Union Pacific argues that because Plaintiffs never requested that it defend it in the *Three Sisters* action, the amount of recovery against Plaintiffs has not been conclusively established within the meaning of § 2778(5).  According to Union Pacific, Plaintiffs expressly chose to conduct their own defense under Civil Code § 2778(4), and thus any recovery against Plaintiffs in *Three Sisters* cannot not be a result of Union Pacific's  "neglect" to defend Plaintiffs.

Union Pacific makes the same argument with respect to the costs Plaintiffs incurred in

responding to the Regional Board's cleanup orders for the Industrial Avenue property. According to Union Pacific, Plaintiffs never tendered either the defense or indemnity of those proceedings. Union Pacific argues that any recovery against Plaintiffs is thus not "conclusive" against Union Pacific because recovery under § 2778(5) refers only to a recovery *by judgment* against the indemnitees, not to a settlement or other voluntarily assumed obligation. Union Pacific also argues that Plaintiffs cannot recover any unnecessary or unreasonable expenses.

Finally, Union Pacific asserts as an affirmative defense that Plaintiffs have failed to mitigate their damages and thus, to the extent certain amounts Plaintiffs paid were unnecessary or unreasonable, it cannot be liable for such amounts. The damages Union Pacific characterizes as are unreasonable include the settlement payment to Davis in the *Three Sisters* action and a portion of the environmental consultant and contractor costs incurred to excavate and remove soil at the Industrial Avenue property that Union Pacific alleges did not require remediation. Union Pacific also argues that certain attorneys' fees Plaintiffs incurred in the *Three Sisters* action are unreasonable.

In response to Union Pacific's arguments, Plaintiffs refer to a letter dated February 5, 1999 from David C. Cook to Union Pacific Corporation requesting that Union Pacific indemnify Plaintiffs with respect to the claims asserted against them in the *Three Sisters* action.[2] Plaintiffs also argue that the action against Safety-Kleen Services, Inc. to establish successor liability was *inherently* defensive in nature since a finding that Safety-Kleen Services was the legal successor to the partnership could mean that the Plaintiffs had no tort liability at all. Finally, Plaintiff's assert that the attorneys' fees are reasonable.

The parties thus dispute whether Union Pacific neglected to defend the Plaintiffs in the *Three Sisters* action, whether the settlement payment was reasonable, whether the costs associated with settlement qualify as SEL's, whether the cleanup costs were reasonable and necessary, and whether the amount of attorneys' fees is reasonable. As to each of the disputes, triable issues of fact preclude summary judgment. The Court respectfully suggests, however, that most if not all of

---

[2] The parties dispute what this letter states.

the disputes in question likely are more appropriate to resolution through a proceeding other than a jury trial, such as an accounting, reference to a special master, or a bench trial before a magistrate judge or this Court.

## IV. ORDER

Good cause therefor appearing, the parties cross-motions for Summary Judgment are DENIED. By letter to the Court, counsel shall advise the Court of the parties preferred means of dispute resolution on or before December 18, 2007.

DATED: December 4, 2007

_____
JEREMY FOGEL
United States District Judge

Copies of Order served upon the following persons:

John F. Barg jfb@bcltlaw.com,

Stuart I. Block sblock@coxcastle.com,

Grace A. Carter gracecarter@paulhastings.com, dellagrant@paulhastings.com

David D. Cooke dcooke@allenmatkins.com

Hilton S. Williams hiltonwilliams@paulhastings.com, dellagrant@paulhastings.com

Marc A. Zeppetello maz@bcltlaw.com